IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY A. BAXTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 14-1347-JDT-cgc |
| ) | |
| CORIZON HEALTH, INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER GRANTING EXTENSION OF TIME AND ACCEPTING RESPONSE,
DENYING MOTION FOR REVISION OF ORDER,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Timothy A. Baxter, a prisoner in the custody of the Tennessee Department of Correction (TDOC) at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, filed this *pro se* action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The complaint alleges that he received inadequate medical care, in violation of the Eighth Amendment, during his previous incarceration at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee. The Court dismissed most of the complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) but directed that process be served on Defendant Amanda Collins, a Physician's Assistant at the NWCX, with regard to only one claim. (ECF No. 9 at PageID 62.) Defendant subsequently filed a motion for summary judgment, arguing both that Plaintiff did not exhaust his administrative remedies with regard to the claim against her and that she did not violate his constitutional rights. (ECF Nos. 25 & 26.)

After a discovery dispute arose between the parties, the Court issued an order on March 27, 2017, granting in part and denying in part Plaintiff's motion to compel and denying Defendant's motion for summary judgment without prejudice to renewal. (ECF No. 32 at PageID 223.) Thereafter, Defendant filed a notice stating she had complied with the order compelling discovery, (ECF No. 33), and also renewed her motion for summary judgment. (ECF Nos. 37 & 38.) However, Plaintiff responded to Defendant's notice of compliance with motions for contempt and to strike the summary judgment motion, claiming the discovery materials provided by the Defendant did not actually comply with the Court's order. (ECF Nos. 34 & 36.) The Court denied Plaintiff's motions, concluding the materials provided by the Defendant were in compliance with the order compelling discovery, and directed Plaintiff to respond to the summary judgment motion. (ECF No. 46.)

On June 29, 2018, Plaintiff filed a motion to revise the March 27, 2017, order partially granting Plaintiff's motion to compel. (ECF No. 54.) In ruling on the discovery motion, the Court accepted Defendant's statement that both she and her supervisor had made several unsuccessful attempts to obtain Plaintiff's medical records from the TTCC. Defendant further stated that "[a]fter several weeks, a staff attorney from TDOC Legal had to intervene and instruct Trousdale to send Mr. Baxter's medical record to Northwest. . . . When Ms. Collins did receive the plaintiff's medical record, it was not a complete copy." (ECF No. 28 at PageID 206.)

Unsatisfied with the Court's ruling on the motion to compel, Plaintiff apparently made further inquiries. He has submitted a letter dated June 15, 2018, from Bryce Coatney, TDOC Director of Legal Services. (ECF No. 54-1.) The letter indicates that Plaintiff asked Coatney for any records showing (1) the name of the TDOC attorney who instructed the TTCC to provide the medical record, (2) the name of the person who requested the assistance of the TDOC attorney and

2

the date of that request, (3) the name of the person to whom the medical record was sent, (4) whether the medical record sent was a complete copy, (5) the name of any person who stated the medical record was not complete, and (6) any emails, correspondence, or notes of conversations about the matter. (*Id.*) Mr. Coatney responded to Plaintiff's inquiries by saying there were no records of any type that contain the information sought. (*Id.*) Based on Coatney's statement, Plaintiff now contends the Defendant lied to the Court about her efforts to obtain Plaintiff's medical records. He again asks that Defendant be compelled to fully respond to the discovery request for his full medical record.

In her response to Plaintiff's motion for revision, Defendant states that on May 24, 2016, she contacted TDOC Staff Attorney Torrey Grimes to request his help in obtaining Plaintiff's medical file. Mr. Grimes then contacted several people by email, one of whom was able to obtain the requested record. Because Mr. Grimes was no longer employed as a TDOC staff attorney, Mr. Coatney apparently was unable to find those emails when he received Plaintiff's inquiry. However, Defendant states Mr. Grimes did keep the emails in question and that she is now in possession of his emails as well as her own. Defendant further states that the emails contain privileged information but that she will produce them *in camera* for the Court's inspection if directed to do so. (ECF No. 55 at PageID 362-363.) Plaintiff has not sought to file any reply to the Defendant's response.

The Court finds it unnecessary to require Defendant to submit the pertinent emails for *in camera* review. The fact that she is willing to do so and has revealed Mr. Grimes's identity and that he is no longer a TDOC staff attorney sufficiently explains the statement in Mr. Coatney's letter and

3

refutes Plaintiff's contention that she deliberately misled the Court.[1] Therefore, the Court DENIES Plaintiff's motion for revision of the order compelling discovery.

On June 18, 2018, Plaintiff filed a motion for extension of time to respond to summary judgment but did not include a certificate of consultation with counsel as required by Local Rule 7.2(a)(1)(B). (ECF No. 52.) On June 29, 2018, before the Defendant's fourteen-day time period for responding to the extension request had expired, Plaintiff submitted his response to summary judgment. (ECF No. 53.) Defendant has not objected to the filing of Plaintiff's response; therefore, the motion for an extension is GRANTED, and Plaintiff's response is deemed timely filed.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

---

[1] To insure the emails in question will be available for *in camera* review in the future if it becomes necessary, Defendant should continue to retain the materials throughout any appeal that may be filed.

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

4

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion."

*Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In the order partially dismissing the complaint, the Court noted that Plaintiff had sued various NWCX, TDOC and Corizon Health, Inc. staff and administrative personnel, alleging he had repeatedly been denied adequate medical care. (ECF No. 9 at PageID 50-52.) However, the only medical provider against whom Plaintiff made any specific allegations was Defendant Collins:

> On December 11, 2014[3] Mr. Baxter was called to the clinic for his three month chronic care visit and seen Defendant Amanda Collins, explaining again all the symptoms to her that he was experiencing, she responded with "well we will keep an eye on your weight." Mr. Baxter weighs a total of 165 lbs from 215 lbs. After Mr. Baxter had informed Collins that he was feeling quite sick, and informing her that an assistant also informed him that he looked sick, Collins stated that "she's an assistant not a nurse" and refused to provide Mr. Baxter any type of tests, evaluations, who has visual signs of an unhealthy appearance.

(ECF No. 1 at PageID 10-11.) Only the claim based on these particular allegations was allowed to proceed. (ECF No. 9 at PageID 13.)

Defendant contends she is entitled to judgment as a matter of law because Plaintiff did not file any institutional grievance concerning the December 2014 chronic care visit and, therefore, has failed to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

---

[3] In Defendant's Affidavit, she states the date of the chronic care visit was December 10th instead of December 11th. (Collins Aff., ECF No. 25-2 at PageID 126.)

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply with the institution's "critical procedural rules," such as time limits for filing grievances. *Woodford v. Ngo*, 548 U.S. 81 (2006).

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95. *See also Jones*, 549 U.S. at 218. The Sixth Circuit requires prisoners "to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). "[I]f the plaintiff contends he was prevented from exhausting his remedies . . . the defendant [must] present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles*, 678 F.3d at 458 n.10.

7

In support of her motion for summary judgment, Defendant has submitted her Affidavit, (Collins Aff., ECF No. 25-2 at PageID 126), and two Affidavits from Benjamin F. Bean, (2017 Bean Aff., ECF No. 37-1; 2016 Bean Aff., ECF No. 25-3). Bean is a Correctional Program Manager for TDOC and the TDOC Deputy Commissioner's designee for review and response to those grievances that are appealed to the Deputy Commissioner. (2017 Bean Aff., ECF No. 37-1 at PageID 247.) Plaintiff also has submitted his own Affidavit in opposition to summary judgment. (Baxter Aff., ECF No. 53-2 at PageID 350.)

Bean states that all properly filed prisoner grievances are logged and tracked in the Tennessee Offender Management Information System (TOMIS). (2016 Bean Aff., ECF No. 25-3 at PageID 140.) Pursuant to TDOC Policy 501.01(VI)(C)(1), an inmate must file a grievance on the designated form within seven days of the event giving rise to the grievance. (*Id.*)[4] Attached to Bean's 2017 Affidavit are a list of all grievances filed by Plaintiff at the NWCX, (ECF No. 37-1 at PageID 249), as well as TOMIS records and copies of the actual grievance documents for those he filed on or after December 10, 2014, (*id.* at PageID 250-271).

Plaintiff does not dispute that the TOMIS and grievance documents in the record show he filed no grievances at the NWCX on or after December 10, 2014, in which he complained about Collins's actions, or lack thereof, at the chronic care visit. However, Plaintiff has submitted a copy of grievance #270982 which he filed on January 3, 2014, complaining that he was not receiving adequate medical care. (ECF No. 39-1 at PageID 280-281.) That grievance was denied, and Plaintiff appealed through all levels to the TDOC Deputy Commissioner, who denied the appeal on

---

[4] The Court also takes judicial notice of TDOC's policies and procedures that are posted on the Department's public website, http://www.tn.gov/correction/policies/poly.html.

February 18, 2015. (*Id.* at PageID 278-284.) Plaintiff appears to contend that because his medical conditions were chronic and ongoing and because grievance #270982 was still being appealed through the various levels on December 10, 2014, that prior grievance also should suffice to exhaust his administrative remedies for the December 10th chronic care visit.

The Court does not find Plaintiff's argument persuasive. As stated, under the TDOC grievance procedure, a prisoner is required to file a grievance within seven days after the event giving rise to the complaint. TDOC Policy 501.01(VI)(C)(1). Grievance #270982 was logged on January 3, 2014, eleven months *before* the chronic care visit with Defendant Collins. Plaintiff complained only in general terms about the fact he had signed up on sick call numerous times because he was in pain and that the nurses and medical staff kept telling him he was on the list to see the doctor, but he still had not seen the doctor. (*Id.* at PageID 280-281.) However, one general medical grievance cannot suffice to exhaust any and all other medical complaints that arise while the inmate appeals that grievance through the various administrative levels. Deeming such later-occurring issues exhausted by a prior grievance would defeat the purpose of giving the prison system a fair opportunity to consider each grievance.

Plaintiff also contends exhaustion should not be required in this case because TDOC Policy provides that medical diagnoses are deemed "inappropriate" for the grievance procedure. *See* TDOC Policy 501.01(VI)(H)(8). He relies on the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), to argue that TDOC's "inappropriate" designation for medical grievances renders the administrative remedy "unavailable" under the PLRA. In *Ross*, the Supreme Court stated, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*,

532 U.S. 731, 738 (2001)). The Court identified three ways in which an administrative remedy would not be "available" to obtain relief.

> First . . .when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . .
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . .
> And finally, . . . when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . .

136 S. Ct. at 1859-60.

The fact that a medical matter could be deemed inappropriate for the grievance process does not automatically make the TDOC grievance procedure "unavailable." If the grievance chairperson deems a matter non-grievable, the inmate may appeal that decision itself. *See* TDOC Policy 501.01(VI)(H). In addition, Plaintiff's appeal of medical grievance #270982 through the various administrative levels shows that grievances deemed inappropriate under the TDOC procedure do not "operate as a simple dead end." When grievance #270982 was logged, the grievance chairperson circled on Form 3689 that the grievance was inappropriate, (ECF No. 39-1 at Page ID 284), but on the same day submitted it for a response by the medical department supervisor, (*id.* at PageID 282). The supervisor's response, on Form 3148, shows she did not merely dismiss the grievance as inappropriate without considering it. She actually reviewed Plaintiff's medical records and history and responded that an appointment with the doctor had been made for Plaintiff and was upcoming; she advised him to sign up for sick call if he had further problems. (*Id.* at PageID 283.) On Plaintiff's grievance form, the supervisors's response was noted as "See attached 3148." (*Id.* at PageID 280.) On appeal to the Grievance Committee and Warden, Plaintiff's medical grievance

again was deemed inappropriate for the grievance process. (*Id.* at PageID 279.) However, the Deputy Commissioner denied Plaintiff's appeal at the final level by concurring with the supervisor's substantive response rather than concurring with the "deemed inappropriate" response of the Grievance Committee and the Warden. (*Id.* at PageID at 278.)

The decision in *Ross* does not require the conclusion that exhaustion of administrative remedies should be excused in this case. TDOC Policy 501.01(VI)(H)(8) is not always used to categorically deny medical grievances as inappropriate to the grievance process without any consideration, and even if a grievance is denied as inappropriate, that decision also can be appealed. Therefore, the grievance process is "available" for medical grievances under 28 U.S.C. § 1997e(a), and Plaintiff's failure to make any attempt whatsoever to exhaust his remedies with regard to the December 10, 2014, chronic care visit requires dismissal of his complaint.

In conclusion, the Court finds the undisputed evidence in the record regarding Plaintiff's failure to exhaust is such that a reasonable jury would not be free to disbelieve it. *See Surles*, 678 F.3d at 455-56. Plaintiff's claims are barred by failure to exhaust his available administrative remedies, and the Defendant is entitled to judgment as a matter of law.[5] Defendant's motion for summary judgment is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The

---

[5] Given the determination that Plaintiff did not exhaust his administrative remedies, the Court finds it unnecessary to address Defendant's arguments regarding the merits of his Eighth Amendment claim.

same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**  
JAMES D. TODD  
UNITED STATES DISTRICT JUDGE